IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ILENA H. MILLER, | ) | Civil No. 06-632-JE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ――――――――――――――――――――――――― | ) | |

Rory Linerud
P.O. Box 1105
Salem, OR 97308
        Attorney for Plaintiff

Karin J. Immergut
U.S. Attorney
Neil J. Evans
Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Thomas M. Elsberry
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
        Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Ilena Miller brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI). Plaintiff seeks an order reversing the Commissioner's decision denying her applications for benefits and remanding this action to the Social Security Administration (the agency) for an award of benefits. The Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on August 6, 2002, alleging that she had been disabled since April 1, 1999. After plaintiff's applications had been denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ William Stewart on September 1, 2005. In a decision dated October 12, 2005, ALJ Stewart found that plaintiff was not disabled. That decision became the final decision of the Commissioner on March 8, 2006, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff seeks review of that decision.

FINDINGS AND RECOMMENDATION - 2

## FACTUAL BACKGROUND

Plaintiff was born on April 14, 1981, and was 24 years old at the time of the hearing before the ALJ. She has a 10th grade education, and attended special education classes during part of the education process. Plaintiff testified that she was 5'6" tall, and weighed approximately 275 pounds. She has worked as a cashier/stocker, service station attendant, and packager.

Though plaintiff alleged disability from the time she became 18 years old in 1999, based upon extremely limited reading and writing ability, she performed substantial gainful activity while working as a cashier at a service station during the last 3 ½ months in 2003 and the first 8 ½ months in 2004.

At the hearing, plaintiff testified that she experienced neck stiffness; dizziness; headaches; low and middle back pain, which was especially severe when bending or leaning; and hip and foot pain that developed after she walked 30 minutes. Plaintiff testified that she experienced panic attacks, depression, and crying spells, and that she read and wrote at a second grade level and has limited arithmetic skills.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.   20 C.F.R. §§ 404.1520, 416.920.   Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.   The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled.   If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.   20 C.F.R. § 404.1520(b).

Step Two.   The Commissioner determines whether the claimant has one or more severe impairments.   A claimant who does not have such an impairment is not disabled.   If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.   20 C.F.R. § 404.1520(c).

Step Three.   Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.   A claimant who has such an impairment is disabled.   If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's

FINDINGS AND RECOMMENDATION - 4

evaluation of the claimant's case proceeds under Step Four.
20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the
claimant is able to perform work he or she has done in the
past.  A claimant who can perform past relevant work is not
disabled.  If the claimant demonstrates he or she cannot do
work performed in the past, the Commissioner's evaluation of
the claimant's case proceeds under Step Five.  20 C.F.R.
§ 404.1520(e).

Step Five.  The Commissioner determines whether the
claimant is able to do any other work.  A claimant who cannot
perform other work is disabled.  If the Commissioner finds
that the claimant is able to do other work, the Commissioner
must show that a significant number of jobs exist in the
national economy that the claimant can do.  The Commissioner
may satisfy this burden through the testimony of a vocational
expert (VE) or by reference to the Medical-Vocational
Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the
Commissioner demonstrates that a significant number of jobs
exist in the national economy that the claimant can do, the
claimant is not disabled.  If the Commissioner does not meet
this burden, the claimant is disabled.  20 C.F.R.
§ 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the
claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the

FINDINGS AND RECOMMENDATION - 5

burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## MEDICAL RECORD

The following summary of plaintiff's medical record is based upon the ALJ's decision.  Though plaintiff contends that the ALJ failed to fully develop the record and failed to fully evaluate her impairments, she has not disputed the ALJ's summary of her medical record.

Plaintiff sought treatment for a migraine headache at an emergency room in May, 2000.  The results of plaintiff's examination were normal, and plaintiff's condition improved after medications were administered.

During visits to Dr. John LeBow in October 2001, plaintiff complained of headaches and depression.  Dr. LeBow noted that plaintiff weighed 250 pounds.

A learning disability evaluation of plaintiff was performed by Pamela Joffe, Ph.D., on December 8, 2001. Dr. Joffe found that plaintiff had an average IQ level, but that she had limited reading and writing skills.  Dr. Joffe diagnosed a dysthymic disorder, a reading disorder, and a disorder in written expression.  She noted that plaintiff's insight and judgment appeared somewhat below average for her age, and that plaintiff had poor impulse control.

Dr. LeBow examined plaintiff on September 24, 2002, after plaintiff had injured her back in a fall. Plaintiff moved stiffly. Dr. LeBow found no gross abnormalities. Plaintiff's gait and station were normal, as were the x-rays.

Plaintiff has tried several medications, including Paxil and Welbutrin, for depression.

In a visit to Dr. LeBow on July 16, 2003, plaintiff reported that she experienced bilateral hip pain when walking. Dr. LeBow's evaluation was negative. Dr. LeBow noted that plaintiff's weight--260 pounds--was probably a significant factor in her symptoms. Chart notes in November, 2003, noted that plaintiff's weight had risen to 271 pounds.

An MRI of plaintiff's head performed in November, 2003, because of plaintiff's recurring headaches, was negative.

During a visit to Dr. LeBow in March, 2004, plaintiff reported that she was working at a service station, and that frequent bending required by the job had caused increased back pain. Plaintiff's range of motion was intact, and the examination was essentially normal. Plaintiff stated that Dr. LeBow's suggestion that she undertake an exercise program for her back pain was impractical because of the demands imposed by her job and her child.

In July 2004, plaintiff sought care for increased back pain at an emergency room. Though plaintiff appeared to be very uncomfortable, her examination was essentially normal,

and staff could not determine the cause of her symptoms. Acute low back pain of undefined etiology was diagnosed.

Plaintiff again went to an emergency room on September 16, 2004, alleging that a motor vehicle accident had exacerbated her back pain. Examination did not reveal any significant clinical signs, and plaintiff was assessed with strains. Dr. LeBow subsequently diagnosed a cervical strain, thoracic pain, and lumbar myositis on September 22, 2004. He noted that plaintiff was "obviously very uncomfortable," but was neurologically intact, with no obvious deficits.

A lumbar MRI performed in July 2004 showed disc bulging at L3-4-5, without central canal or neural foraminal stenosis. Chart notes from October 2004 indicated that plaintiff was able to move around better, though she continued to experience some upper back and neck stiffness.

Plaintiff began a regimen of physical therapy following the accident. On October 19, 2004, a physical therapist stated that plaintiff could not return to work at that time because she could not sit or stand for more than 15 minutes at a time, lift anything heavier than 5 pounds, or lift higher than chest height. The physical therapist estimated that it would be at least two weeks before a "limited return to work might be possible." Chart notes indicate that plaintiff's symptoms improved considerably by November, 2004.

Plaintiff was examined by Jonathon Stout, M.D., in November, 2004, based upon her complaints of back and shoulder pain.  Plaintiff moved about with discomfort during the examination, but the examination was not remarkable. Dr. Stout stated that he suspected a psychogenic source for some of plaintiff's symptoms.

Plaintiff was again examined in an emergency room in January, 2005, following another motor vehicle accident. Plaintiff complained of neck and back pain.  Her examination was normal, and imaging was negative.  Plaintiff was diagnosed with acute cervical thoracic and lumbar strains and chest wall contusion, and was discharged.

State Disability Determination Service (DDS) psychologists who reviewed plaintiff's file in September 2002 and April 2003 concluded that plaintiff had a reading and writing disorder and dysthymia, which caused moderate difficulty with plaintiff's daily living activities, concentration, persistence, and pace.  They further concluded that plaintiff had only mild limitations in social functioning, and found no evidence of decompensation.  The DDS psychologists concluded that plaintiff could perform simple routine tasks that did not require frequent reading and writing, and that plaintiff had no limitations in social functioning.

**HEARING TESTIMONY**

At the hearing, plaintiff testified that she experiences neck pain and tightness that causes dizziness, headaches, blurry vision, difficulty in moving her neck to the side, pain in the lower and mid back with shooting pains down her legs, numbness in both feet, reduced flexibility in hips, that she is obese, suffers panic attacks, blurry vision, depression with crying and memory loss, and that she has difficulty with reading, writing, and simple math, and is dyslexic.

Patricia Lesh, a Vocational Expert (VE), was asked to consider a hypothetical individual with plaintiff's age, education, past work experience, and the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, and to occasionally bend and squat; needs to change position occasionally; is able to perform simple instructions; and is unable to meet significant reading and writing requirements, perform complex tasks, or independently formulate plans and goals. The VE testified that such a person could not perform plaintiff's past relevant work as a packager/assembly worker, stocker, cashier, service station attendant, or Job Corps mechanic, but did retain the functional capacity required to perform a number of sedentary unskilled jobs, including work as a sedentary assembler, ampule sealer, and final assembler.

FINDINGS AND RECOMMENDATION - 10

**ALJ'S DECISION**

The ALJ found that plaintiff's severe impairments included thoracolumbar degenerative disc disease, a history of cervical myositis, obesity, a dysthymic disorder, a reading disorder, and a disorder of written expression. He further found that these impairments did not meet or equal a criteria of impairment listed in 20 CFR Subpart P, Appendix No. 1 (the Listings).

The ALJ concluded that plaintiff retained the residual functional capacity required to lift and carry 20 pounds occasionally and 10 pounds frequently, and to occasionally bend and squat, with a need to change positions occasionally. He concluded that plaintiff could perform simple instructions, but was "unable to meet significant reading and writing requirements," could not perform complex tasks and goals, and was unable to formulate goals and plans independently.

Based upon this assessment of plaintiff's residual functional capacity, the ALJ concluded that plaintiff could not perform her past relevant work, but could perform other jobs that exist in substantial numbers, including work as a sedentary assembler, ampule sealer, and final assembler. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act (the Act).

In reaching his decision, the ALJ found that plaintiff's statements concerning her impairments and limitations were not

wholly credible.  In her supporting memorandum, plaintiff does not challenge that conclusion.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771,

772 (9th Cir. 1986).   The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."   Andrews, 53 F.3d at 1039-40.


## DISCUSSION

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because the ALJ failed to fully and fairly develop the record concerning the effects of her obesity on her ability to work.   She also contends that, though the ALJ correctly found that plaintiff's thoracolumbar degenerative disc disease, cervical myositis, and obesity were "severe impairments," he erred in "fail[ing] to explain which conditions accounted for which limitations . . . ."   Plaintiff argues that the ALJ should have "inquire[d] with a physician regarding Plaintiff's physical capacities," and "could have obtained a consultative examination to ascertain [plaintiff's] physical limitations but chose to not do so, or consider its usefulness."   She contends that "the ALJ should have learned how obesity, and other conditions when combined with obesity, affected Plaintiff's ability to work by soliciting medical opinion."

Plaintiff also contends that the ALJ erred in failing to address the combined effects of plaintiff's obesity and "gastroenteritis; esophagitis; amenorrhea; Lisfranc sprain of

the right foot; vertigo; headaches; diarrhea; depression; reading and writing disorder; dysthymia; medication reaction (dizziness secondary to DepoProvera); bilateral hip arthralgias; psychogenic pain; chest wall contusion; sprain of the right wrist; and sprain of the right ankle."

A careful review of the record and of the ALJ's decision does not support plaintiff's contentions.  In his decision, the ALJ clearly acknowledged that plaintiff's obesity was a severe impairment, and explicitly noted that plaintiff's obesity imposed limitations which were "taken into account in assessing her residual functional capacity."  An ALJ has a duty to further develop the record only when the evidence is ambiguous or is inadequate to allow for a proper evaluation of the evidence.  <u>Tonapentyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).  Nothing in the administrative record before this court supports the conclusion that the evidence before the ALJ was either ambiguous or insufficient to allow for the evidence to be properly evaluated.  Instead, that record includes substantial evidence concerning plaintiff's medical condition, activities, and physical capabilities, and this evidence was clearly sufficient to permit the ALJ to evaluate the effect of plaintiff's obesity on her residual functional capacity. Nothing in this record suggests or implies that a more detailed discussion of plaintiff's obesity would have altered the ALJ's assessment of plaintiff's residual functional

capacity or his conclusion that plaintiff was not disabled
within the meaning of the Act.  Further, the ALJ's conclusion
that plaintiff's severe impairments, including obesity, did
not render plaintiff disabled is supported by substantial
evidence in the record.

Plaintiff's contention that the ALJ failed to adequately
consider her various other impairments likewise fails.  Here,
the ALJ adequately reviewed the pertinent evidence in
plaintiff's medical record, and substantial evidence in that
record supports the conclusion that none of plaintiff's
impairments, alone or in combination, significantly limited
plaintiff's physical or mental ability to perform basic work
activities.  See 20 C.F.R. §§ 404.1520(c); 416.920(c).

A finding of disability requires that a claimant have a
severe impairment or combination of impairments which has
lasted or is expected to last for a period of at least 12
months, and a claimant has the burden of establishing that she
has such an impairment or impairments.  42 U.S.C.
§§ 423(d)(1(A), 1382c(a)(3)(A).  The ALJ specifically noted
that most of the conditions of which plaintiff complains were
either transient or caused no significant limitations.
Plaintiff, who has the burden of establishing that she has a
severe impairment or combination of impairments that lasted or
was expected to last 12 months, did not provide or cite to
evidence that any of the various conditions that the ALJ did

not find to be "severe" lasted or were expected to last 12 months or significantly limited her ability to perform basic work activities.  Though plaintiff cites a diagnosis of gastroenteritis or esophagitis, Dr. LeBow, who made the diagnosis, did so on one sole occasion, and related the condition to plaintiff's use of Imodium.  Dr. LeBow recommended a different medication, and no further complaints of the condition appear in the record.  The amenorrhea that plaintiff cites was likewise diagnosed only once, and was related to plaintiff's use of DepoProvera.  There is no evidence that this condition lasted for 12 months or significantly limited plaintiff's ability to perform basic work activities.

The other conditions of which plaintiff complains likewise appear, from the record, to have lasted less than 12 months.  The Lisfranc sprain to plaintiff's right foot, sprain of the right wrist and right ankle, dorsal myositis, chest wall contusion, lumbar spine and sacrum contusion, bilateral hip arthralgias, dizziness secondary to DepoProvera, and diarrhea of which plaintiff complains all appear to have resolved in less than 12 months.  The ALJ found the remaining impairments, including dysthymia and reading and writing disorders, to be severe, and these were considered in the evaluation of plaintiff's residual functional capacity.

The ALJ did not fail to fully and fairly develop the record, and the ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence in the record. The Commissioner's decision should be affirmed.

### CONCLUSION

Plaintiff's request for an order reversing the decision of the Commissioner should be DENIED, and a judgment should be entered dismissing this action with prejudice.

### SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due August 2, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 17th day of July, 2007.

John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 17